Duke's heirs, &c., v. Duke's devisees.

CASE 48—EQUITY—OCTOBER 9, 1883.

# Duke's heirs, &c., v. Duke's devisees.

### APPEAL FROM DAVIESS CIRCUIT COURT.

1. The provisions of the Revised Statutes applicable to this case do not alter the nature or character of a separate estate, the only effect of the statute being to regulate the manner of its use and the method of alienation.

2. To create a separate estate at common law or under the statute, the language of the deed or devise must clearly manifest an intention to place the property beyond the control of the husband. No specific words are necessary to its creation.

3. A separate estate may be created where the donee is discovert, to take effect upon her marriage. It may be made to extend to a particular coverture or any number of covertures, and that without regard to whether the will or deed under which the estate is held was executed before or during the coverture.

4. There can be no such thing as a separate estate which is operative in the absence of a conjugal tie. The sole idea of such an estate is the exclusion of the husband's control.

5. The deed from Mrs. Price's father to her husband in trust for her contains nothing to indicate an intention to exclude any future husband from his marital rights, and therefore creates no separate estate as against any such future husband.

6. Although the deed from P. and his wife in trust to A. created in Mrs. P. a separate estate, yet, as the estate was to take effect in the future, it was destroyed by the conveyance to B., and from B. back to P. and wife, and it became Mrs. Duke's, late Price's, general estate, which, under the statute, she could not dispose of by will.

7. The judgment authorizing Mrs. Price to trade and act as a *feme sole* ceased to operate at the death of her husband.

STUART & ATCHINSON, JOLLY & TODD, AND WM. LINDSAY
FOR APPELLANTS.
    No brief.

OWEN & ELLIS, W. N. SWEENEY, WILLIAMS & POWERS, AND
JAMES S. PIRTLE FOR APPELLEES.
    No brief.

JUDGE HINES DELIVERED THE OPINION OF THE COURT, AND AFTERWARDS THE FOLLOWING MODIFIED OPINION.

This is an appeal from the judgment of the circuit court, directing the probate of the will of Mrs. Duke as to certain

real and personal estate, and rejecting it as to other estate owned by her, and which she had attempted, in the will, to dispose of. There is also a cross-appeal, on which it is insisted that the court erred in rejecting any portion of the will.

Mrs. Duke was married twice, her first husband being Robert S. Price, and her second, Duke. She died leaving no children by either husband. This contest is between the devisees, under the will of Mrs. Duke, and her heirs, and involves an inquiry as to whether, by certain conveyances, Mrs. Duke held a separate estate in the property embraced in the conveyance; and secondly, whether a decree, obtained during her coverture with Price, authorizing her to trade as a *feme sole*, and to dispose of her property by deed or will, operated to continue her power of disposition beyond the lifetime of Price.

The provisions of the Revised Statutes, which were in force at the time of the making of the will by Mrs. Duke, and which apply to this case, are as follows:

Section 27, article 4, chapter 47: "If real or personal estate be hereafter conveyed or devised for the separate use of a married woman, or for that of an unmarried woman, to the exclusion of any husband she may thereafter have, she shall not alienate such estate with or without the consent of any husband she may have; but may do so when it is a gift, by the consent of the donor or his personal representative.

"Such estates, heretofore created, shall not be sold or encumbered but by order of a court of equity, and only for the purpose of exchange and reinvestment, for the same use as that of the original conveyance or devise, and the

court shall see that the exchange or reinvestment is prop-
erly made."

Chapter 106, section 4: "A married woman may, by
will, dispose of any estate secured to her separate use by
deed or devise, or in the exercise of a special power to that
effect."

The first conveyance we will consider is that from George
Riley, the father of Mrs. Price, to R. S. Price, in trust for
Mrs. Price, the material portion of which is as follows:

"The said George Riley conveys all the said land to said
Robert Price, as trustee for the said Prudence and her heirs,
and the said Robert Price being entitled to his lifetime in
said land; but it is fully understood the said land is not to
be held in no way bound for any debts or contracts of said
trustee, and said land is not to be sold, only for the said pro-
ceeds to be paid over to the said Prudence and her heirs,
and applied to the purchase of other lands, will be bound
for as the above, the title to the said Prudence and her heirs,
and the said George Riley warrants, and forever defends,
the title of said land to the said Robert Price, trustee, from
all persons claiming under him."

The provisions of the statute quoted do not alter the
nature or character of separate estate.   The character of
the estate is to be determined as it was determined prior to
the adoption of the statutes, the only effect of the statute
being to regulate the manner of its use and the method of
its alienation.   Under those statutes, considered in connec-
tion with other provisions of the same revision, a *feme covert*
may bind her general estate for necessaries for herself and
family when the contract is evidenced by writing, signed by
herself and husband, but she cannot will it ; while her sepa-
rate estate cannot be bound or subjected in any way, except

in the exercise of a special power for any contract made by her, but it may be willed.

In order to create a separate estate at common law, or under the statute, the language of the deed or devise must clearly manifest an intention to place the property beyond the use or control of the husband, or any one else. No specific words are necessary to the creation of such an estate, but the intention to accomplish the object indicated must be manifest in the writing. It is also a question of intention, where the conveyance or devise is made during coverture, as to whether the restriction on the character of the estate is to continue beyond the coverture then existing. A separate estate may be created when the donee is discovert, to take effect in the event of a future marriage. It may be made to extend to a particular coverture, or to any number of covertures, and that without regard to whether the instrument under which the estate is held was executed before or during coverture. It is always a question of intention with the conveyor or devisor. Under this rule it is manifest that the deed of trust does not create a separate estate in Mrs. Price even during the lifetime of her then husband, because it did not create an estate in the wife which was exclusive of all other persons. It gave to the husband a life-estate unqualifiedly, to which he would not have been entitled except in case there had been children of the marriage. But, in addition to this, there is nothing in the deed to indicate an intention to exclude any future husband from his marital rights, and, therefore, as against any future husband, the deed does not create a separate estate, or, in other words, the separate estate, if created, which we think is not the case, existed only during the life of the first husband.

The other deed under which it is claimed that Mrs. Price, subsequently Mrs. Duke, was entitled to a separate estate, was executed by Price and wife to Anthony in trust for certain purposes, and the material provisions of it are as follows:

"Whereas, the said Prudence is anxious and determined to secure the benefit of said land to the use and benefit of said husband, Robert S. Price, during the term of his life, and should he have children, then to himself and children, and in the event that she should survive him, then to her own separate use and benefit."

It is clear that under this deed Robert S. Price held a life-estate, and that, in the event he had children by his then wife who should survive the wife, the estate should go to them, but that, in case the wife survived, a separate estate should remain in her. As we have already suggested, such an estate may be created, to take effect upon a future marriage, but, in the time intervening, the estate in the *feme* is absolute, and this applies as well when the estate is created during one coverture, but is not to take effect until its expiration, as when it is created in a *feme sole*. There can be no such thing as a separate estate which is operative in the absence of a conjugal tie. The sole idea of a separate estate is the exclusion of the husband's control. An estate may be created in a woman, whether married or single, with the restraint of alienation, as could be done as to any one, and the terms upon which the estate is held by her need not be different; but when the estate created in the woman is a *separate estate* under the modern common law, as in this instance, the restraint upon alienation is to be determined by the character of the estate, because, as we have already said, the nature of the estate has not been changed, only the

method or manner of its alienation. (Perry on Trusts, third edition, sections 651, 652, 653; Brown v. Alden, 14 B. M., 143.)

If these conclusions be correct, there was no separate estate in Mrs. Price when she subsequently made her will while the wife of Duke, because during the Price coverture the husband and wife, uniting with the trustee, Anthony, conveyed the land in fee to Baird, reserving a life-estate to R. S. Price, and Baird reconveyed to Price and wife the fee-simple title, the survivor to take the whole. If, then, as we have concluded, the separate estate did not attach during the Price coverture, the power of alienation was complete at the time the conveyances were made, and they operated to reinvest Mrs. Price and her husband with the fee, which, under the statute, could not be willed. The estate conveyed by Price and wife to Anthony was the wife's general estate, and the power to make of this separate estate has already been determined by this court. It was decided by this court in Parrot, &c., v. Kelley, &c., 79 Ky., 491, that a *feme covert* could convey her general estate, by joining with her husband, to another, for the express purpose of having a reconveyance to the wife's separate use, and that such use would be effective. If such an estate may be thus avowedly created by indirection, there appears no reason why it may not be directly created by conveyance to a trustee. There is nothing in the policy of the law in the one case that does not exist in the other.

Section 27, article 4, chapter 47, Revised Statutes, already quoted, does not apply to or restrain the power of alienation, because the separate estate had not attached at the time the conveyance was made by Price and wife and the trustee, Anthony, to Baird.

The conclusion, therefore, is, that although the conveyance by Price and wife in trust to Anthony created a separate estate in Mrs. Price, that as it was to take effect in the future, it was destroyed by the conveyances to Baird and from Baird to Price and wife, and was general estate in Mrs. Duke at the time she attempted to will it, and that, under the statute, this land did not pass by the will.

The next question to be considered is, whether the decree obtained during the life of Robert S. Price, and on the joint petition of himself and wife, authorizing the wife to trade as a *feme sole* and to dispose of her property by will or deed, impressed the character of separate estate upon her property, which continued to operate during the second coverture. The manifest object of the statute was to provide for the wife and family against the improvidence or incapacity of the then husband. There is nothing in the statute, or in its policy, that indicates an intention that the decree should operate after the termination of the circumstances that gave it birth. The legislature might have provided that it should continue, and in that case the character of separate estate would have been permanently impressed upon the property, and any subsequent husband would have no more power over it than the one in whose life-time the decree was obtained. It is not to be presumed that the court, in making the decree under the peculiar circumstances of that marital relation, determined that any other such relation that might exist in the future would be of the same character—that the next husband would necessarily be improvident or incapable of providing for his family. The decree ceased to be operative on the death of Price.

The judgment is reversed on the appeal and affirmed on the cross-appeal, with directions for further proceedings consistent with this opinion.

The court being equally divided in opinion as to whether the land referred to in the deed from Price and wife to Anthony, trustee, remained separate estate in Mrs. Duke, the opinion of the court below adjudging it to be separate estate, and that it passed under the will, is affirmed. In other respects the judgment of the court below is reversed on the appeal and affirmed on the cross-appeal.

Judge PRYOR delivered the following dissenting opinion:

The question in this case involves the right of a married woman to dispose of her estate by last will and testament, and this involves the further question as to whether the estate devised was her separate or general estate; if her general estate, the devise is void; if her separate estate, it must be held valid. The *feme covert*, Mrs. Duke, owned several tracts of land. She had been twice married, died without children, and left at her death her husband surviving her, to whom she devised the greater part of her estate for life, with remainder to the Masonic Widows and Orphans' Home, &c.

The first husband of Mrs. Duke was Robert Price, and by a conveyance to Robert Price as trustee from his wife's father, George Riley, she, the wife, was invested with the title to a tract of land containing two hundred and seventy-five acres, subject to the life-estate of the trustee and husband, Robert Price. This conveyance did not vest the wife with a separate estate, and therefore she had no power to dispose of this particular tract of land by will, but it passed to her next of kin, and in this conclusion there is no division of opinion with the members of this court, and the court below therefore erred in adjudging that Mrs. Duke had the right to dispose of it by will.

The father of Mrs. Duke (then Price) made a last will, by which he gave to Mrs. Price (now Duke) one half of a tract of land known as the home place, on the Henderson road, containing eight hundred acres. The land was divided, and Prudence Price, while in the possession of her part of the land, and being anxious, and, as she says, determined to secure the use and benefit to her husband, Robert Price, of this land during his life, &c., on the 21st of December, 1850, executed, in conjunction with her husband, a conveyance to William Anthony, by which she conveyed to him in trust this tract of land, to be held by the said Anthony *for the use* and benefit of her said husband, Robert Price, during his life, and should he have children, then to himself and his children, *and in the event she should survive him, then to her own separate use and benefit.*

On the 15th of December, 1865, Robert Price and Prudence (now Duke), his wife, and the trustee, Anthony, in consideration of love and affection, conveyed this land to James Baird, describing it as containing 375 acres, more or less, reserving a life-estate in Price and wife and any children they might have.

On the 21st of October, 1872, Beard reconveyed this land, in consideration of another tract conveyed to him, to Robert Price and wife, and to the survivor of them.

Mrs. Price survived her husband, and afterwards married Duke, to whom she devised this land for life, remainder to the other appellees named in the deed. If the title of Mrs. Duke is to be determined by this last deed, made on the 21st of October, 1872, then it was her general estate, and she had no power to devise it. While, on the other hand, if the estate held by her in this land was a separate estate by reason of the conveyance made to Anthony in trust on

the 21st of December, 1850, then, under the provision of the Revised Statutes which must control this case, she had no power to sell it, and being separate estate, she could dispose of it by last will.

Section 27, article 4, chapter 47, Revised Statutes, provides: " If real or personal estate be hereafter conveyed or devised to the separate use of a married woman, or for that of an unmarried woman, to the exclusion of any husband she may thereafter have, she shall not alienate such estate with or without the consent of any husband she may have, but may do so when it is a gift, by the consent of his donor or his personal representative.   Such estates heretofore created shall not be. sold or encumbered but by order of a court of equity, and only for the purpose of exchange and re-investment for the same use," &c.

Chapter 106, section 4, provides: " A married woman may, by will, dispose of any estate secured to her separate use by deed or devise, or in the exercise of a special power to that effect."

By the deed of the 21st of December, 1850, the trustee was vested with no power to sell, and the conveyance to Mrs. Price was *to her own separate use and benefit*. She had, as this court has heretofore decided she had the right to do, converted her general estate into separate estate, and not only so, had conveyed the estate to her husband (through this trustee) for life, and then to his children, and if he died without children, then to her separate use, the very language being used necessarily creating a separate estate. She then held, by the terms of the deed, a vested interest in remainder, subject to be defeated in the event her husband died leaving children.   The separate estate Mrs. Price had in the land was created by the deed to Anthony in

trust. That conveyance defines the extent and character of the estate she held on the land. If general estate, she could not will it, or if separate estate, she could not convey it. Suppose Mrs. Duke (then Price) had survived her husband (Price) without selling the land, and died without marrying a second time, making a will disposing of this land, can it be doubted but that it would have passed the title, and for the reason that she was disposing of an estate that had been conveyed *to her separate use.* Then, with an estate she had the right to dispose of by will, she undertakes, in the face of the· statute, to dispose of by deed, the statute expressly prohibiting the alienation of any such estate with or without the *consent of any husband she may have.* It was not to the exclusion of the husband she then had, because he had a life-estate in the land by the terms of the deed she had executed; it was, then, to the exclusion of any husband she might thereafter have; and because it was sold during the life of the first husband, it is maintained that the separate estate, or the right to its use not having attached, the conveyance passed the title. The statute prohibiting such a sale and conveyance does not say that the use must have attached, or the right to the enjoyment must exist, else the right to sell is not prohibited. *It is the estate conveyed or devised to the separate use of the wife or the unmarried woman that cannot be sold,* and if a separate estate, it is immaterial whether its enjoyment depends upon a contingency or the married woman is, at the time, in the possession, or whether the title is a vested or contingent remainder, *if it is an estate conveyed* to her separate use, she cannot convey it.

We can look to the rule of the common law to determine what words are necessary to constitute a separate estate, but the right of alienation is expressly prohibited, whether the

conveyance be to a married or unmarried woman. If sepa-
rate estate to the exclusion of any husband she may have,
she cannot dispose of it by deed, but may by will.

It is argued that this deed of trust to Anthony does not
create a separate estate during the life of her then husband,
because it did not create a separate estate in the wife, to
take effect upon a future marriage, and that there can be no
such thing as a separate estate which is operative in the
absence of a conjugal tie. In this conclusion we cannot
concur. A conveyance to an unmarried woman to the ex-
clusion of her husband, or any she may have, would doubt-
less, at the common law, have vested the grantee with the
right to sell; that is, although conveyed in that way, she
could dispose of it as her absolute estate. She might bind
the estate by her contract, whether married or unmarried;
but the mode of alienating or encumbering such estates was
entirely changed by the Revised Statutes, and if separate
estate, whether the woman was married or unmarried, she
could not alienate it without the consent of the donor, or by
application to a court of equity, and then for purposes of
re-investment. If conveyed, reads the statute, *to the sepa-
rate use of a married woman, or that of an unmarried woman,
to the exclusion of any husband she may thereafter have, she
shall not alienate it.*

It is the character impressed on the estate that made it
inalienable under the Revised Statutes, and it was not a
question as to whether the *feme* was married or unmarried
when the effect of the conveyance was to exclude the hus-
band, whether the then husband or any future husband, the
power of alienation was taken from her by the statute. The
estate was created when the conveyance was made. Its
character given to it by that instrument, and whether an

estate for life or fee-simple, a vested or contingent remainder, what Mrs. Price obtained was a separate estate; and with such an estate, if she had married Duke without ever having disposed of it, he, as husband, could not have asserted any right to it by reason of the marital relation. A married woman and her husband, at no period during coverture, under the Revised Statutes, could have alienated her separate estate, and whether the deed under which she held had the effect to exclude her husband then living, or some future husband, is not a question affecting the right of Mrs. Duke to dispose of this estate by last will and testament.

In 1849 Michael Flynn, for the consideration of love and affection, conveyed to Francis Quinn a lot of ground in Louisville in trust, and to be for the sole and separate use and benefit of his said wife, Mary Ann Flynn, her heirs, &c., but all the rents and profits accruing during the life of the grantor to remain free from all claim or demands whatever of his wife, and appertain to her said husband. Mary Ann Flynn died in the year 1880, having made a will, by which she devised this lot for certain objects and purposes mentioned. She left no children; but her heirs-at-law brought an action against Michael Flynn and Bishop McClosky to recover of Michael Flynn the possession, and divest the latter of title. It was insisted in that case that Mrs. Flynn was not invested with such an estate as she could dispose of by will, she being a married woman. This court, in passing on the question, said: "If the character of separate estate was imparted to the property by the deed in trust, the testatrix had the right to dispose of it by will." And after determining that it was separate estate, proceeded to say: "It is not the right to the present use and enjoyment of the *property* that determines a separate estate, but it may be created

and exist without reference to the quantity of interest in the property or the time of its enjoyment.   It is sufficient if the *feme covert* have the sole and exclusive right to the estate devised."

If the opinion delivered on the hearing prevail, a separate estate cannot be created in a vested or contingent remainder in the wife when the husband is the owner of the particular estate.   The husband and wife might not be prohibited by the common law from selling such an estate, but, under the provisions of the Revised Statutes, the husband and wife could not dispose of it.   The conveyance to Baird passed no title, and having been reconveyed, Mrs. Duke had the power of devising it to the appellees, and could have done so even if there had been no reconveyance, as Baird was without title.   There is no controversy, however, in this case between Baird and the devisees of Mrs. Duke.   The will, as to this land, passed the title to the devisees.

Judge HINES was not present when the case of Thompson v. McClosky was decided.